UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAIRO JOSE ESPINOZA CRUZ, | |
| Petitioner, | |
| v. | CAUSE NO. 3:25-CV-919-CCB-SJF |
| BRIAN ENGLISH, KAMSING LEE, KRISTI NOEM, and PAMELA JO BONDI, | |
| Respondents. | |

## OPINION AND ORDER

Jairo Jose Espinoza Cruz, an immigration detainee, by counsel, filed a motion for a preliminary injunction, asking the court to prevent Respondents from transferring him out of Miami Correctional Facility during the pendency of this habeas proceeding. ECF 8. Espinoza Cruz argues that absent a preliminary injunction, the Department of Homeland Security (DHS) may transfer him to another facility at any time, which would frustrate this court's jurisdiction, impede his access to counsel, and irreparably harm his ability to pursue habeas relief. Respondents filed a response, and Espinoza Cruz filed a reply. ECF 14, ECF 17. The motion is ready to be decided.

### I. Background

Espinoza Cruz, a citizen of Nicaragua, is subject to a final order of removal from the United States. Following the removal order, however, he applied for U nonimmigrant status ("U visa"), a form of immigration relief available under the Immigration and Nationality Act to victims of certain qualifying crimes who have

assisted or are willing to assist law enforcement. *See* 8 U.S.C. § 1101(a)(15)(U). The U.S. Citizenship and Immigration Services (USCIS) has determined that Espinoza Cruz's U visa petition is prima facie approvable and issued a bona fide determination under 8 U.S.C. § 1184(p)(6). The I-797 Notice of Action states, as relevant here:

> Because USCIS has determined your petition is bona fide and you warrant a favorable exercise of discretion, you may be issued an employment authorization document and may be placed in deferred action. Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal.

ECF 7-2 at 1. Because the yearly statutory cap of U visas was already reached, Espinoza Cruz is on a waiting list for a U visa to become available, at which point USCIS will make a final determination about his eligibility for the visa. Espinoza Cruz argues that while he is in deferred action status, the government cannot remove him, so his current detention pending his removal is unlawful. In his preliminary injunction motion, he asks that the court order that he not be transferred out of Miami Correctional Facility during the pendency of his habeas petition.

## II. Jurisdiction

Respondents first argue that this court lacks jurisdiction over this case because of 8 U.S.C. § 1252(g), which states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Respondents argue that Espinoza Cruz is challenging the execution of his removal order, and therefore § 1252(g) strips this court of jurisdiction.

2

The Supreme Court has held that the jurisdiction-stripping language in § 1252(g) should be construed narrowly and does not encompass all claims arising from deportation proceedings. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* The Seventh Circuit, likewise, found § 1252(g) was not triggered just because a petitioner filed a habeas petition that had the incidental effect of preventing a removal. *See Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000). Instead, "§ 1252(g) is applicable only where the alien's well-pleaded complaint is based on one of § 1252(g)'s three listed factors." *Id.* The Seventh Circuit held § 1252(g) did not preclude jurisdiction over a habeas petition in which the "essential problem" in the case came from "the interaction (or lack thereof) between" an agency decision placing petitioner in deferred action status and the subsequent decision to execute a removal order against him. *Id.* at 529; *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022) (concluding § 1252(g) did not strip court of jurisdiction over habeas petition claiming petitioner's removal order was not subject to execution because she had Deferred Action for Childhood Arrivals status when she was arrested and detained); *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) (concluding § 1252(g) did not strip court of jurisdiction over Federal Tort Claims Act claim that alleged plaintiff was wrongfully removed in violation of a stay of removal issued by circuit court because "his claims arise not from the execution of the removal order, but from the violation of our court's order").

So, too, here, Espinoza Cruz is not directly challenging the execution of his removal order, though his petition was triggered by the government's decision to detain him in order to remove him. Instead, Espinoza Cruz is challenging the government's disregard of his deferred action status. This is not a case in which Espinoza Cruz is asking for relief while USCIS makes a determination on his application. *See, e.g., E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) (no jurisdiction over habeas petition challenging execution of removal order while pursuing administrative relief); *Botezatu v. I.N.S.*, 195 F.3d 311, 314 (7th Cir. 1999) (no jurisdiction to review refusal to grant petitioner deferred action). USCIS has made its determination and decided that Espinoza Cruz has filed a bona fide application for a U visa and is eligible for deferred action status. Espinoza Cruz is seeking enforcement of that decision, which incidentally will prevent his removal. The court has jurisdiction to hear his petition.

### III. Preliminary Injunction Motion

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a

mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

*1. Likelihood of Success*

The key question here is the legal effect of the language in the Form I-797 Notice, that stated Espinoza Cruz "may be placed in deferred action," which is an "act of administrative convenience to the government which gives some cases lower priority for removal." Although this language appears discretionary, the Supreme Court interpreted similar language applicable to the Deferred Action for Childhood Arrivals (DACA) program to be a "program for conferring affirmative immigration relief." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 10, 18 (2020) (Immigration

5

and Customs Enforcement were instructed "to exercise prosecutorial discretion on an individual basis by deferring action for a period of two years, subject to renewal" and recipients were allowed work authorization and other benefits during this period); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("Approval of deferred action status means that, for the humanitarian reasons described below, no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.") (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure § 72.03 [2][h] (1998)).

There is no reason to treat the deferred action granted in connection with a bona fide determination for a U visa application any differently than the deferred action granted in connection with other provisions. *See Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES, No. 1:25-cv-23201-GAYLES, 2025 WL 3012786, at *5 (S.D. Fla. Oct. 28, 2025) ("Although the caselaw is limited, courts have held that a grant of deferred action is an affirmative immigration benefit that effectively makes it unlawful for a removal order to be executed while the alien has deferred action status.") (quotation marks omitted). As the Seventh Circuit has held, "the last agency action supplants all prior ones," *Fornalik*, 223 F.3d at 530, which means the USCIS's grant of deferred action supplants ICE's removal order against Espinoza Cruz.

Therefore, the court finds that Espinoza Cruz has a likelihood of success on the merits of his claim that it is unlawful to remove him while he has deferred action status that postdates his removal order.

*2. Irreparable Harm*

Espinzoa Cruz argues he will suffer irreparable harm if he is moved from Miami Correctional Facility because if he is at a different facility, his access to counsel will be impaired and he will be farther from his family. He says that he was the primary provider for his family, while his partner remained home, caring for a newborn and a two-year old with special medical needs. The longer he is away from his family, he continues, the more detriment they face. Respondents counter that he cannot show irreparable harm because his removal is lawful, and a lawful removal does not demonstrate irreparable harm beyond what is typical for someone removed based on a final order of removal.

Though Espinoza Cruz frames his requested relief as preventing the government from transferring him out of Miami Correctional Facility, that necessarily encompasses a prohibition on removing him from this country. Although removal is not "categorically irreparable," *Nken*, 556 U.S. at 435, here, the severe financial and emotional hardship that would occur to Espinoza Cruz's family, were he wrongfully removed is sufficient for the court to find irreparable harm. If Espinoza Cruz is removed, he would lose the benefit of his deferred action and work authorization, and a wrongful removal would prolong the time he is away from his family and able to provide support. The same goes for if Espinoza Cruz were transferred to a different detention facility while his habeas petition is pending. Miami Correctional Facility happens to be close to where his family resides in Indianapolis, Indiana. Given the

7

likelihood of success he has shown, transferring him to a different facility will irreparably prolong the time he is away from his family.

### 3. Balance of Equities and the Public Interest

Respondents argue the government and the public's interest in the timely enforcement of the immigration laws vastly outweigh any perceived harm to Espinoza Cruz. By contrast, Espinoza Cruz argues the government will experience no meaningful hardship from maintaining him at Miami Correctional Facility during the pendency of this case and a transfer to another facility will cause him harm by impeding his access to counsel. Further, Espinoza Cruz argues that courts routinely recognize that the government has no valid interest in enforcing unlawful detention practices or in transferring a detainee in a manner that obstructs judicial review. He asserts that the public interest is served when federal detention authority is exercised within the bounds set by Congress and when constitutional safeguards are respected.

Here, the court finds that these factors weigh in favor of Espinoza Cruz. Respondents make no argument that they need to free up space at Miami Correctional Facility for other detainees; instead, they argue they may need to transfer Espinoza Cruz in order to carry out the removal order. The government's interest in timely enforcement of immigration laws, here, is outweighed by the public interest in ensuring that applicable law is followed.

## IV. Conclusion

Espinoza Cruz has established he is entitled to a preliminary injunction, preventing him from being moved from Miami Correctional Facility. In addition, the

court waives the security bond requirement of Federal Rule of Civil Procedure 65(c). Neither party mentions the bond requirement in their briefs, and the court finds that a bond is not warranted under these circumstances. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010).

In his reply, Espinoza Cruz's counsel represents that after the habeas petition was filed on November 7, 2025, Espinoza Cruz has been moved multiple times, and counsel currently is unaware of his current location. On or around November 26, 2025, Espinoza Cruz was moved in or near Adams County Correctional Center in Natchez, Mississippi, presumably in anticipation of immediate removal from the United States. Then, he was moved again on November 29, 2025, but his counsel are unaware of his current location and counsel for Respondents were unable to confirm Espinoza Cruz's location. In light of these developments, in addition to granting the preliminary injunction, the court will order Respondents to file a notice with the court stating where Espinoza Cruz is located.

For these reasons, the court:

(1) **GRANTS** the motion for a preliminary injunction (ECF 8);

(2) **ORDERS** Respondents to file a notice with the court stating Espinoza Cruz's current location by close of business on **December 4, 2025**;

(3) **ORDERS** that Respondents shall not transfer Jairo Jose Espinoza Cruz from Miami Correctional Facility while his habeas corpus petition is pending before this court, and if he is not currently located in Miami Correctional Facility ORDERS

Respondents to effectuate his return to Miami Correctional Facility as soon as possible, and no later than **December 5, 2025**; and

    (4) **DIRECTS** the clerk to send a copy of this order to the Warden of Miami Correctional Facility at the Indiana Department of Correction.

    SO ORDERED on December 3, 2025.

                                         /s/*Cristal C. Brisco*
                                        CRISTAL C. BRISCO, JUDGE
                                        UNITED STATES DISTRICT COURT